DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

LARRY JOE SILLAWAY, as personal
representative of the Estate of Larry
James Gray Sillaway, deceased; and DAWN
MARIE EDGERTON,

Appellants,

v.

BRANDON CROSSROADS BOWL, INC.
d/b/a BRANDON CROSSROADS BOWL; and
BOJE ENTERPRISES, INC.,

Appellees.

No. 2D2024-2464

_____

August 12, 2026

Appeal from the Circuit Court for Hillsborough County; Cheryl K.
Thomas, Judge.

Linda Bellomio Commons of Linda Bellomio Commons, P.A., Tampa, for
Appellants.

Candy L. Messersmith of Rumberger, Kirk & Caldwell, P.A., Orlando; and
Joseph T. Metzger of Rumberger, Kirk & Caldwell, P.A., Tampa, for
Appellees.


ROTHSTEIN-YOUAKIM, Judge.

This is a dram shop case involving a driver who allegedly was
served too much alcohol at a bowling alley and then crashed a Ford F-
250 truck into a car, killing Larry James Gray Sillaway (Larry James)
and injuring Dawn Edgerton. Larry Joe Sillaway, as personal

representative for the estate of Larry James (Sillaway), and Edgerton appeal the trial court's final judgment in favor of Brandon Crossroads Bowl, Inc., and Boje Enterprises, Inc. (collectively, Brandon Crossroads). Sillaway and Edgerton raise multiple issues on appeal; we affirm without comment except to address whether the claims in the amended complaint relate back to the initial complaint.

At common law, vendors were absolved of liability resulting from their sale of alcoholic beverages to adults. *See Ellis v. N.G.N. of Tampa, Inc.*, 586 So. 2d 1042, 1044 (Fla. 1991) ("Prior to 1959, the common law established that a commercial vendor of alcoholic beverages could not be liable for the negligent sale of those beverages when either the purchaser or third persons were injured as a result of their consumption."). Section 768.125, Florida Statutes (2014), provides an exception to that common law rule, stating, in pertinent part:

> A person who sells or furnishes alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury or damage caused by or resulting from the intoxication of such person, except that a person who . . . knowingly serves a person habitually addicted to the use of any or all alcoholic beverages may become liable for injury or damage caused by or resulting from the intoxication of such minor or person.

*See also Ellis*, 586 So. 2d at 1046 (noting that section 768.125 imposes liability on a vendor who knowingly serves a person habitually addicted to alcohol when that person's intoxication results in injury or damage). Thus, to avoid the immunity otherwise afforded Brandon Crossroads by the common law, Sillaway and Edgerton had to allege and prove under section 768.125 that Brandon Crossroads had served alcohol to the driver of the F-250 knowing that he was habitually addicted to alcohol. But that can be hard to do when it's unclear who was driving.

The driver's identity seemed fairly obvious when the lawsuit was filed. On August 10, 2014, Andrew Connell, Sam Meredith, and Jesus Ronduelas went to Brandon Crossroads Bowl and started drinking at the bar—heavily. Soon after they left, the F-250, which belonged to Connell's mother (who was also Meredith's girlfriend), crashed into the car driven by Larry James, with devastating results. As for the occupants of the F-250, the only person found still at the scene after the accident was Ronduelas, a cognitively and physically impaired twenty-seven-year-old with a middle school education. On September 17, 2015, Ronduelas pled guilty to DUI manslaughter and was sentenced to more than ten years in prison.

Sillaway and Edgerton filed their initial complaint in August 2016, just barely before expiration of the two-year limitations period for the estate's wrongful death claims but a little more than two years before expiration of the four-year limitations period for Edgerton's negligence claims.[1] In that initial complaint, Sillaway and Edgerton alleged that Ronduelas had been driving the F-250 and that Brandon Crossroads had known that he had an alcohol addiction and had kept serving him nonetheless. The complaint did not allege or suggest in any way that someone else may have been the driver and did not even mention Connell or Meredith.

When Ronduelas was eventually deposed in February 2018 (roughly six months before the expiration of the limitations period for Edgerton's claims), however, he testified that that fateful August 2014 evening had been his very first time at the bowling alley. Troublingly, he

---

[1] Section 95.11(4)(d), Florida Statutes (2014), specifies that a wrongful death action must commence within two years. Section 95.11(3)(a) provides that a negligence action must commence within four years.

also testified that he had been at the bowling alley with Connell and Meredith and that after they all left, he had *not* been the one driving the F-250. Rather, he had been passed out in the bed of the F-250 and had woken up in the hospital. He was emphatic at the deposition that he had pled guilty to DUI manslaughter only to avoid the risk of a far longer sentence.

Despite Ronduelas's February 2018 deposition testimony, Sillaway and Edgerton did not depose anyone else until 2020 and 2021. Those later depositions suggested that Connell and Meredith may have fled the scene after the accident, leaving Ronduelas behind to take the blame by default. By the time of Connell's deposition in September 2021, however, Meredith, who had never been deposed, had died of cancer.

It was not until 2022—nearly six years after filing suit and approximately four months after Brandon Crossroads moved for final summary judgment on the initial complaint—that Sillaway and Edgerton moved for leave to file an amended complaint that dropped Ronduelas as the driver and alleged instead that Connell or Meredith had been driving and that Brandon Crossroads had known that both Connell and Meredith were habitually addicted to alcohol.[2]

The trial court initially permitted the amendment after hearing extensive argument on whether the amendment related back to the initial complaint. It reasoned at first, "I think the—the change of which one of them drove isn't so different that it creates a relation back problem." But after Brandon Crossroads moved to dismiss the amended complaint on statute of limitations grounds, the court granted that

---

[2] Counts I through IV of the pertinent amended complaint raise claims for wrongful death and personal injury and allege that Connell was the driver. Counts V through VIII raise the exact same claims but allege that Meredith was the driver.

4

motion with prejudice, reasoning that changing the driver—which also gave rise to a corresponding requirement that Sillaway and Edgerton allege and prove that Brandon Crossroads had known that the newly identified driver was habitually addicted to alcohol—did not arise from the same "conduct, transaction[,] or occurrence" as the initial complaint. The court explained:

> I think when you change Ronduelas to Connell or Meredith and now we have an issue, the habitual addiction of Connell, the habitual addiction of Meredith, and whether the defendants knew about the habitual addiction, now I think that the factual theory has changed to the point that it's no longer the same transactions and occurrences.

Thereafter, Sillaway and Edgerton moved to disqualify the judge. Concluding that their motion was legally sufficient, the judge granted it. Sillaway and Edgerton then moved to vacate the judge's order of dismissal. In 2023, after the parties unsuccessfully attempted to resolve this dispute at mediation, the successor judge denied the motion to vacate, concluding that the claims in the amended complaint did not relate back and that, in any event, permitting amendment at that point would be unfairly prejudicial to Brandon Crossroads. The court explained:

> This case was filed in 2016 and the subject incident occurred in 2014. The Court has considered the loss of evidence that has occurred since the time of the accident, in addition to all of the discovery that has gone forward based on the convicted tortfeasor. Additionally, at least one of the witnesses, if not more, are no longer available.

The case proceeded to a summary judgment hearing on the initial complaint, with the court ultimately entering judgment in Brandon Crossroads's favor. This appeal followed.

"An amended complaint raising claims for which the statute of limitations has expired can survive a motion to dismiss if the claims

5

relate back to the timely filed initial pleading." *Kopel v. Kopel*, 229 So. 3d 812, 815 (Fla. 2017) (citing *Flores v. Riscomp Indus., Inc.*, 35 So. 3d 146, 147 (Fla. 3d DCA 2010)). We review de novo whether an amended complaint relates back to a timely filed complaint. *See Caduceus Props., LLC v. Graney*, 137 So. 3d 987, 991 (Fla. 2014) (citing *Pino v. Bank of N.Y.*, 121 So. 3d 23, 31 (Fla. 2013)). Florida Rule of Civil Procedure 1.190(c) explains that an amendment relates back to the original pleading if it arises "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

In *Kopel*, the Florida Supreme Court rejected a line of cases determining that an amended complaint did not relate back to the initial complaint if it alleged different causes of action. 229 So. 3d at 817. The supreme court agreed instead with another line of cases holding that "as long as the initial complaint gives the defendant fair notice of the general factual scenario or factual underpinning of the claim, amendments stating new legal theories can relate back." *Id.* at 816–17 (first citing *Fabbiano v. Demings*, 91 So. 3d 893, 895 (Fla. 5th DCA 2012); then citing *Flores*, 35 So. 3d at 148; and then citing *Kiehl v. Brown*, 546 So. 2d 18, 19 (Fla. 3d DCA 1989)). The supreme court noted that this was the case even if the legal theory of recovery changed or if the original and amended claims required the assertion of different elements. *Id.* at 816. *Kopel* emphasized, however, that "a newly added claim *could* fail to meet the relation back test if the new claim is so factually distinct that it does not arise out of the same conduct, transaction, or occurrence as the original." *Id.*

As Sillaway and Edgerton correctly observe: "[W]e have the same bar and corporations in the . . . amended complaint, same plaintiffs, same accident, same investigation, and same video showing three men

6

drinking at the defendants' bar. . . . The only change is the driver." Relying on cases addressing relation back in the context of medical malpractice claims, they argue that amending the complaint to change the identity of the driver is akin to changing the identity of the doctor who committed malpractice while leaving the identity of the doctor's employer—the vicariously liable medical partnership or hospital defendant—the same.

To be sure, Brandon Crossroads remains the defendant. And caselaw supports the proposition that if a medical partnership or hospital is sued for negligence under a theory of vicarious liability, a subsequent amendment to change only the identity of the employee who engaged in the allegedly negligent conduct relates back to the initial complaint. *See Cinque v. Ungaro, Weber & Brezing*, 622 So. 2d 1051, 1052 (Fla. 4th DCA 1993) (holding, in a wrongful death suit against a medical partnership, that where the medical partnership was named as a defendant in the initial complaint and the amended complaint changed only the name of the negligent employee, the amendment related back to the initial complaint); *see also Maraj v. N. Broward Hosp. Dist.*, 989 So. 2d 682, 685–86 (Fla. 4th DCA 2008) (holding that an amended complaint adding a claim against a radiologist and a vicarious liability claim against the hospital based on the radiologist's negligence related back to the timely filed initial complaint against the hospital for vicarious liability based on the negligence of emergency room physicians).

But we disagree that the situations are analogous. As an initial matter, Brandon Crossroads's liability is derivative, rather than vicarious, because it can be liable for the injuries caused to Larry James or Edgerton only if one of its employees engaged in a wrongful act of his or her own (here, knowingly serving a habitual alcoholic). *See Main St.*

7

*Ent., Inc. v. Guardianship of Faircloth*, 342 So. 3d 232, 235–36 (Fla. 1st DCA 2022) (explaining that liability under section 768.125 is derivative and that derivative liability is distinguished from vicarious liability because a vicariously liable party has engaged in no wrongful conduct, whereas derivative liability involves wrongful conduct both by the person who is derivatively liable and the person whose wrongful conduct caused the injury to another), *approved in part*, 392 So. 3d 1042, 1045 (Fla. 2024) (declining to address whether liability under section 768.125 is derivative or vicarious); *Okeechobee Aerie 4137, Fraternal Ord. of Eagles, Inc. v. Wilde*, 199 So. 3d 333, 341–42 (Fla. 4th DCA 2016) (holding that liability under 768.125 is derivative).

Regardless, Sillaway and Edgerton's argument that Brandon Crossroads was on notice that its employees had wrongfully provided alcohol to *someone* at the bowling alley that night is like arguing that a malpractice complaint against a hospital relates back because the hospital was on notice that its employees had committed malpractice on *someone* at the hospital on the alleged date. Consistent with *Cinque* and *Maraj*, if Sillaway and Edgerton had sought to amend the complaint to more correctly identify which employee or employees of Brandon Crossroads had served the allegedly known-alcoholic Ronduelas, we would likely have no trouble concluding that the amendment related back (even if a claim under section 768.25 is not vicarious). *See Maraj*, 989 So. 2d at 686 ("Like the plaintiffs in *Cinque*, the Marajs merely changed the name of the tortfeasor on whose negligence the vicarious liability claim against the hospital was based.").

Instead, however, we are presented with a scenario in which Sillaway and Edgerton would be attempting to change the core factual allegation underlying Brandon Crossroads's purported liability under

8

section 768.125 by now alleging that Brandon Crossroads's employees knew that Connell or Meredith was habitually addicted to alcohol. Their conduct with respect to Ronduelas, on whom the initial complaint unequivocally and exclusively focused, would become completely irrelevant. Given the extent to which the alleged facts change in the proposed amended complaint, *see Kopel*, 229 So. 3d at 816, we cannot agree that the amended complaint is based on the same "conduct, transaction or occurrence" as the initial complaint. As Justice Canady warned in his dissent in *Kopel*:

> Under the relation-back rule, a plaintiff may plead new causes of action based on the basic factual narrative previously alleged. But a plaintiff is not entitled to allege new core facts. A plaintiff may supplement—with related facts and new causes of action—the original narrative, but may not bring forth a new narrative. A claim predicated on such a new narrative is not a claim that "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading" and therefore does not relate back to the filing of the original complaint.

229 So. 3d at 820 (Canady, J., dissenting) (quoting Fla. R. Civ. P. 1.190(c)). Because Sillaway and Edgerton's amended complaint necessarily predicated Brandon Crossroads's liability on a brand new factual narrative, the trial court did not err in concluding that the amended complaint did not relate back and denying the motion to vacate the order of dismissal with prejudice.

Even if the amended complaint did relate back, however, the trial court properly denied the motion to vacate based on its separate determination that Brandon Crossroads would be prejudiced if relation back were permitted. *See Caduceus*, 137 So. 3d at 994 ("[T]he trial court retains the discretion to deny the amendment [under a relation-back theory] if it is so late in the proceedings that the opposing party would be

9

unfairly prejudiced and other options, such as a continuance, would be unfair to either party.").  As the court recognized, Sillaway and Edgerton did not seek to substitute Connell or Meredith as the driver until 2022— eight years after the crash, nearly six years after they filed suit, and four years after Ronduelas's deposition.  By that time, critical evidence had been lost, and at least one key witness, Meredith, was no longer available.  Under those circumstances, we cannot conclude that the court abused its discretion by denying amendment and instead proceeding to summary judgment on the initial complaint.

Affirmed.

BLACK and LABRIT, JJ., Concur.

_____

Opinion subject to revision prior to official publication.